All right, and a Cortez-Mendez, she'll be happy to hear from you. May it please the court, my name is Melissa Mitchell, and I represent the petitioner, Jose Marcial Cortez-Mendez in this case. Now this is a case coming from the Board of Immigration Appeals, and while this court's review is generally limited in these types of cases to reviewing the decision of the board, it may review the immigration judge's decision if the board adopted it. And in this case, the board did adopt the decision of the immigration judge. In this case, the board dismissed the appeal of the petitioner on the basis of the nexus issue alone, stating that the board need not address the remaining bases of denial. However, in this case, as I mentioned previously, this court may review the decision of the immigration judge as well. And in this case, there are three- Yes, Your Honor? If you lose on the nexus issue, then that resolves the case. That is correct, Your Honor. But you think you don't lose? I believe that the petitioner did establish a nexus in this case, and I believe that the other issues, therefore, should have been addressed by the board in this case. Why don't you tell us what the nexus is, and what's your best proof of that? So, the particular social group, first of all, the particular social group that the petitioner was claiming in this case was one of a family-based particular social group, particularly in this case, a family of a disabled person, the disabled person being his father. And the immigration judge and the board affirmed that the petitioner did not demonstrate a nexus between the harm that he fears, which in this case was gang violence, and the particular social group, as I mentioned, family-based particular social group. Well, isn't the basis of your argument is that because the father or stepfather was disabled, and in that culture, that meant that your client was an easy mark for recruitment in the gang? Yes. Isn't that the whole kernel of your argument? Yes, Your Honor. And the petitioner repeatedly stated that he was targeted for recruitment, for threats from gang members, because the gang members perceived his father, who was a deaf man, and his father was unable to work and provide for his family. The gangs perceived him as a vulnerable target, and therefore easy to recruit, easy to threaten. Do you make that argument in your opening brief? Yes, Your Honor. I wasn't quite sure I found that there. There was a lot of discussion about discrimination against disabled persons, but the way you've articulated it, I'm not sure I found that in your brief. Can you direct us to the page in your brief where you make that argument? Yes, Your Honor. I'm not sure if my brief is up. Yes, it's page 11 of my brief, I believe is where it starts. Well, really at the bottom of page 10 of the brief, at his individual hearing, petitioner showed that it is more likely than not that his life would be threatened by gangs due to his membership in a particular social group, through his family ties. And then the first paragraph on page 11, petitioner showed that he and his family were personally persecuted specifically because of their father's disability. The question here is, don't we owe some deference to finding a fact, the founder of fact, and what the founder of fact found was the nexus here? Yes. That's, in other words, we're not sitting at the court of first discretion. That's correct, Your Honor, yes. And so the standard of review is that if the board determined that the alien is not eligible for withholding of removal, it must be upheld unless it is manifestly contrary to law and an abuse of discretion. We're arguing here that it is manifestly contrary to law, particularly in light of this court decision and Salgado-Sosa. That's a pretty steep burden, isn't it, on appeal? It's potentially, yes, Your Honor, but it's a burden that we think qualifies in this case upon review of all the facts and the testimony in the affidavit submission. For example, if it was family membership, that was the reason that he was suffering persecution. The BIA pointed to the fact that there were a great many members of his family which remained unharmed and unthreatened in El Salvador. Yes, Your Honor, there are a number of members of his family who remained unharmed in El Salvador, but that's because his family has had to be very careful. Several members of his family have had to relocate to different places. They hope that the gang members who are familiar with their father figure do not find them. The threat that was communicated to him, the only threat that's identified in the record, was something communicated to his mother over a decade ago. And even that threat pertaining to his refusal to join the gang, that was an assertive threat over a decade ago, and that related to his refusal to join the gang. Yes, Your Honor. So the petitioner articulated the threat that the gang members made to him personally multiple times over an extended period of time. The gang members, they targeted him and they told him that if he didn't join, that he or his family would be killed. And, in fact, it drove him to go into hiding at an aunt's house. And this is in his declaration and this was testified to in court. And then, yes, he did articulate one specific threat that was made to his mother for him. Were those words in the statute the cause of a question of fact? Which? The question of the nexus, the question of how you interpret the words because of, or was it a question of fact? Yes, I believe so, Your Honor. And you have a fact finder here that indicated. I really think the reason here is that he refused to join the gang. In other words, you have many, many cases like this where they come before the finder of fact and the finder of fact has to determine why exactly the alleged persecution took place. And there are a huge number of people who are claiming that it took place because of family membership, but there are also a huge number of people who are threatened simply because they refused to join the gang. So there's a question that the issue, it seems to me, comes down as to who is best able to decide the factual question of the nexus because of, and I don't know how it was resolved in the first instance, but I'm just not a trier of fact. That's my problem. Yes, Your Honor. So that would have been the responsibility of the immigration judge in this case. The immigration judge did indeed state very frequently in the decision that the reason that the petitioner was persecuted was because of his refusal to join the gangs. However, the judge... I don't have in this case a question of whether there was any persecution at all. That was also one of the issues in this case. Yes, Your Honor. I mean, as I understand the record, he wasn't physically harmed. It was a very different situation from Sal Dago Sosa. In Sal Dago Sosa, the petitioner is physically harmed, and I don't think the petitioner here was ever physically harmed in any way, and his family still lives in El Salvador without persecution. So it seems to me that that was on the question of persecution, which is distinct and separate from the question of nexus. Yes. I didn't see any particular evidence going to the question of whether he himself was physically harmed or whether his family members were physically harmed. The representation is made that his family is living in El Salvador without any persecution. Well, yes, Your Honor. So the question of whether either he or any of his family members were physically harmed is not exactly the correct question in this case. To show persecution, it doesn't necessarily have to be physical harm. It is... Tell us what your best evidence of persecution is. Threats. Numerous threats on his life, such as... Is that any different from the attitudes of other young men in particular in El Salvador that get those threats on a daily basis? It's different in this case because these threats were coming because of his membership in this particular social group. Well, that brings us back to nexus, which is why I asked you about the argument in your brief because when I read what you say on page 11 of the brief, it seems to be an argument that disability discrimination in a general sense is persecution, regardless of where it comes from. And under that theory, it would seem that any family member of a disabled person would be entitled to refugee status. Is that your argument? Yes, if they can show that they were persecuted as a result of their membership in that particular social group. I think we're kind of going around in a circle here because I'm not understanding what the persecution is. I mean, how is this particular petitioner different from any other disabled person or relative of a disabled person in El Salvador? So he was, as I've said, Your Honor, he was repeatedly threatened by gangs almost on a daily basis, I think. And this is persecution. The case Lee v. Gonzalez is a 2005 case decided by this court. Persecution involves the infliction or threat of death, torture, or injury to one's person or freedom on account of a protected ground. Again, I asked you first about the easy mark argument. That appears in your supplemental brief. Yes. But isn't that a better argument? I mean, you seem to be making two arguments. Disabled people in the culture are viewed in such a way as to reflect on family members. And that's why he was persecuted. Or was he persecuted because his father was disabled and couldn't look out for him or couldn't stand up for him to the gangs? Are both those arguments yours? I believe that both of those arguments are part of the overall argument. Your Honor, I'm out of time. Let me just say one thing. I don't see the limiting principle here. Because let's put it this way. The methods of recruitment to these gangs, they're never benign. They're always seeking to bring pressure and define whatever vulnerable spot they can. And the difficulty that I have is just throwing wide open this statute. Because in every single case, there are going to be some threats made because of a refusal to join a gang. In every case. And if we buy their case, it's going to be practically everybody who refuses to join a gang is going to be eligible for asylum. And I just... Because those are the principles under which the gangs operate. They're not nice. And I just don't see how we... I just don't see the limiting principle in your argument at all. Yes, Your Honor. In this case, the limiting factor is that he, the petitioner, was targeted for recruitment specifically because of his membership in a family of a disabled person. And that makes him different from all the other people who may have been threatened by gang members. I'm not disputing that gang members frequently make threats and are violent. To resolve that very question, we have to try a fact. Because there's always going to be a claim that in some way and by some connection, this was because of family membership. And that's going to be a petitioner's claim. It routinely is. And then the government's claim is, no, it wasn't because of family membership. The real reason was he just didn't join up with the gang. And you have those two competing narratives in practically every one of these cases. And I think that's what differentiates a telecourt from someone who actually, with his eyes and ears, knows the evidence. At any rate, you've got some rebuttal time. And we will be happy to hear from you on rebuttal. Yes, Your Honor. Thank you. Mr. Stalzer. Good morning, Your Honors, Counsel, and may it please the Court, Rob Stalzer on behalf of the AG. Your Honors, the issue here is whether the evidence compels the conclusion that the gang members targeted Petitioner because of his father, because of his membership in his father's family, and not because he rejected the gang. But here we have his own testimony, his own affidavit that says the reason the gang members started trying to harm him, actually physically harm him and he feared their threats, is because he rejected their advances. That's not a protected ground under the statute, and that's why there was no nexus in this case. And it's not like the case in Salgado Sosa, which the Court ordered us to believe. Mr. Stalzer, is your claim, in essence, that his own defense defeats his claim? I'm not sure what you mean. Well, I thought what you just indicated was that his own affidavit indicated the basis for his persecution, for his persecution was that he refused to join the gang. So if that's his own evidence, I thought your argument was that his own evidence defeated his claim. Yes, Your Honor, it is. But by his own testimony, he explained what the gang's motivation was. And that's the key issue, right? Why were they coming after him? Were they coming after him because he rejected recruitment, or were they coming after him because he was a member of the Cortez family? And his own statement was, he was asked, why do they want to kill you? And he said, it began when they kept asking me to join them, and he refused. That's what they were concentrated on, and that's where the persecutory harm was founded, and that's where it came from because he rejected the gang. He wasn't subject to persecutory harm because he was a member of the Cortez family, and none of the other family members were either, which is, in terms of the context of this claim, something that I think the immigration judge relied on, and the board mentioned it as well, and said, well, none of the other members of the family are being targeted as members of the family, which would tend to suggest that Petitioner was. When the gang members finally caught up with his mother, they didn't threaten the mother. They said, oh, you're a member of the Cortez family. You're vulnerable, too, right, because that was part of his claim that he was vulnerable. They were solely focused on Petitioner and the fact that he had rejected their advances a decade earlier. And, again, that isn't a particular social group. Merely rejecting the gang's advances does not qualify him for asylum. That's not the required nexus to a protected ground. I keep coming back to my concern about the lack of a limiting principle here because there must be scores of thousands of people who don't, for whatever reason, want to join the gang. And if all of those become successful advocates of asylum, we've thrown that open completely. We've thrown the statute open in disregard of our own precedent, which says we're going to join a gang. It's not a protected ground. And here, again, the fact-finder is crucial here. You know, I worry at some extent about throwing the statute wide open. We're depriving many of these countries of their ablest and most enterprising citizens. I mean, we run the risk of really hollowing out those individual countries. And having a magnet for many people who are willing to remain lead efforts in salutary reform. I agree, Your Honor, and I would say in this case, that's why the nexus requirement is important. That's why it's in the law. You can't just qualify for asylum merely because something bad happened to you. It has to be on account of one of those five specific reasons. And a particular social group is not as wide open as I think my sister counsel might like, because you do have to show the particularity, the social visibility, that is, to qualify. And here, just because he rejects the gang recruitment, that's not enough. That's not a particular social group. And he didn't show that they were coming after him because of membership in such a group. If you look at that as a protected ground, it just throws the statute, it makes the statute almost completely open-ended, because those kinds of cases come all the time. It would, Your Honor. I just want to clean up something that my sister counsel said. The board did use the language adopt and affirm in its decision, but it adopted and affirmed the immigration judge's conclusion. It did not adopt the immigration judge's decision, which is ordinarily the case when we would say that we would encourage the court to go back to the immigration judge's decision and look through that. Here, they simply said, we adopt and affirm the immigration judge's conclusion that he didn't qualify for withholding of removal. I won't belabor the point, Your Honors. If there are any other questions. Let me see if we're analyzing the questions. We have no questions. Thank you for your time. We would like to hear further from you, Mr. Mitchell. In terms of your rebuttal. Okay. Yes, Your Honor. Thank you. I can see your concern that, as you say, the statute might be thrown wide open if we allow for the refusal to join gangs to be a basis for asylum and withholding of removal. However, this case is limited because, as I've stated previously, the gangs were targeting him for recruitment because of his membership in a particular social group. Suppose the argument was my family is poor, very poor, and so that's why I'm targeted. The gang offers me money plus threats if I don't join. Is that poor family? Is that a sufficient ground? If you could prove that. Potentially. Potentially. I believe that court. Doesn't that fall in the hands of Judge Wilkinson's concern that there would be hardly any cases that would not deserve falling under the statute? In the case of poverty, it's not. I think it would be much more difficult to make a family-based particular social group because it's not just because his family is poor, but because the potential applicant himself would be poor. And so that wouldn't be because of his family members. He would be targeted because he himself was poor. One thing I'd like to make clear, and that is his refusal to join a gang, I find that altogether admirable. I think it's wonderful. It's something to be admired. And so it's not any lack of sympathy, and it's not any lack of respect for the position that he took. It's simply a concern on my part with the statute. It's a matter of law, not a lack of respect for any resistance that he offered to the gang's efforts to recruit him. That's altogether a good thing. And if Congress decided to amend the statute along those lines, I'd be the first to follow it. And I just don't see it here when I combine the language in the statute with the role of a trier of five. That's my problem. Yes, Your Honor. I can see the problem that you might have with that, but I continue to see it in a very limited way. I don't see it as something that if this petition were granted, I don't see it as changing the way that the case law works with regard to asylum and withholding of removal. I don't think it would make it overbroad, because in this case, it's just as previous cases like Salgado, Sosa, like Crespin, Valladares, it's because of the membership in the family that this person was targeted. Anything further? We just respectfully ask that the Court grant the petitioner's petition for review. Thank you, Your Honors. We thank you very much for your argument. We'd like to come down and brief counsel and then move into our next witness.
judges: J. Harvie Wilkinson III, G. Steven Agee, James P. Jones